NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| MAXXAM GROUP, INC. | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : | **OPINION** |
| v. | : | Civil Action No. 05-cv-1834 (DMC) |
| UNITED STATES OF AMERICA, THE UNITED STATES DEPARTMENT OF THE NAVY, AND THE UNITED STATES DEPARTMENT OF THE ARMY, et al, | : : : : : | |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motions by Defendants United States of America, United States Department of The Navy, and The United States Department of the Army ("Defendants") for summary judgment, and by Plaintiff Maxxam Group, Inc. ("Plaintiff") for partial summary judgment pursuant to Fed. R. Civ. P. 56(c). Plaintiff additionally moves for injunctive relief under §7002(a)(1)(B) of the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act ("RCRA"). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motion for summary judgment is **denied**; Plaintiff's motion for summary judgment is **denied** and Plaintiff's motion for injunctive relief is **denied**.

**I.    BACKGROUND**[1]

The Unexcelled Chemical Site ("Site") is a former industrial facility, owned by several different entities since 1915. The site is located in Cranbury, New Jersey and is comprised of approximately 395 acres. In 1954, an explosion occurred at the site and it subsequently closed. The parties dispute what was produced at the site.[2] Plaintiff alleges there is no evidence in the record that anything other than munitions were ever manufactured at the site, while Defendants argue that both fireworks and munitions were manufactured there. The parties dispute who the owners were and during which time periods, particularly during World Wars I and II and the Korean War. Defendants claim that Unexcelled (an owner of the site), and not Defendants owned the land at the site, and all 130 buildings on the site in the 1940s and 1950s. Plaintiff asserts that Unexcelled did not own all 130 buildings, but concedes that Unexcelled owned the land.

The parties also dispute the role of Defendants during the active years of the facility at the site. In particular, Defendants assert that they did not have the right to hire and fire at the site, and that there was no contract stating whose responsibility disposal was, while Plaintiff claims that Defendants oversaw and controlled the work progress at the facility and directed disposal of waste.

The parties dispute whether a contract was entered into in 1942, whether the alleged contract was executed, and whether there was a monetary limit of $150,000 for labor and tools. Plaintiff

---

[1] The facts set forth in this Opinion are taken from the undisputed facts set forth in Rule 56.1 statements in Plaintiff's motion for partial summary judgment, Defendants' motion for summary judgment, Plaintiff's Rebuttal to Defendants' Statement of Material Facts, Defendants' Rebuttal to Plaintiff's Statement of Material Facts Plaintiff's Supplemental Statement of Undisputed Material Facts and Defendants' Responses to Plaintiff's Proposed Supplemental Undisputed Facts.

[2] Plaintiff's rebuttal to Defendants' Statement of Material Facts, ¶2 and Defendants' Statement of Material Facts, ¶2.

asserts that in the fall of 1942, Contract 1089 was executed between Unexcelled and Defendants and there was a recorded deed for the site property.  Plaintiff alleges that pursuant to this contract, Unexcelled was required to acquire, install, or construct machinery, equipment and facilities owned by Defendants.  Plaintiff asserts that Defendants owned facilities and equipment during the period when manufacturing and releases occurred, while Defendants allege that their equipment was intermingled with Unexcelled's equipment and that there is no record of disposition, namely, that there is no evidence that the equipment was "waste management" equipment and they assert that there is no evidence of any adverse environmental release from any Defendant supplied production equipment. Plaintiff claims that the subject waste management equipment was clearly provided by Defendants.  Plaintiff further alleges that Defendants became sole owner of all facilities at the site, which Defendants dispute; Defendants assert that there is no evidence to support their ownership of any facilities at the site.

The purpose of the site's manufacture is also at issue; Defendants state that the site was constructed out of company funds with no mention of United States (Defendants) supplied equipment, while Plaintiff asserts that the facility was built for the manufacture of 20mm rounds of ammunition for The United States Navy.  Plaintiff believes the evidence will demonstrate that there have been environmental releases in connection with Defendant supplied production equipment and that there is evidence to support the connection with Defendant directed production processes. Plaintiff further alleges that hundreds of thousands of dollars worth of Defendant-owned machinery and equipment was installed at the site and that the site was utilized for production of war materials for Defendants. Defendants argue that this amount contradicts Plaintiff's expert's testimony and that the evidence shows that less than $20,000 worth of equipment was used.

-3-

The parties dispute whether Defendants retained ownership over the materials used at the site. Plaintiff argues that The United States retained ownership, while Defendants deny this assertion. Also, Plaintiff argues that agents of The United States were stationed at the site, and that these agents oversaw every aspect of progress at the site. Defendants argue that no agency agreement existed for the site. Prior to the explosion, Plaintiff alleges that The United States provided direct supervision over the manufacturing process and that The United States recognized that the munitions assembled at the site contained explosives, and therefore had the ability to explode. Defendants maintain that they did not maintain a supervisory role, and were not aware of the explosive nature of anything produced at the site.

It is undisputed that the site was used for the production of munitions until 1954, when an explosion, killing two Unexcelled workers forced the site to shut down. It is also undisputed that The United States government contracted to purchase new munition fuses from Unexcelled, but rejected 50,000 defective fuses. The parties dispute whether Defendant inspectors or Unexcelled inspectors rejected the defective fuses. Unexcelled then used parts of the rejected fuses to make new fuses. The parties do not dispute that the rejected fuses were stored in a munitions shed and that keys to that shed were held by an inspector. The parties, however, dispute which inspector (an Unexcelled inspector or a Defendant inspector) held the keys to the shed where the 1954 explosion occurred.

Defendants assert that the two Unexcelled workers who were killed somehow gained access to the munitions shed holding the rejected fuses by obtaining the keys from an Unexcelled inspector or by gaining access on their own. Plaintiff claims that the more plausible alternative was that a Defendant inspector gave access to the munitions shed to the Unexcelled workers. Importantly, the

-4-

parties dispute who owned the defective fuses and who owned the munitions shed; Defendants argue that Unexcelled owned the fuses and munitions shed, and Plaintiff argues that Defendants owned the defective fuses and the munitions shed.  The parties do not dispute that Unexcelled was indicted by the prosecutor's office for the explosion, but Plaintiff asserts that the indictment was not the result of Unexcelled's alleged ownership of the fuses or the munitions shed.

A year after the explosion, in 1955, there was disposition of small, government-furnished drums containing residual black powder, which were possibly removed from the site in 2001.  In 1957, the buildings on the site were demolished. In 1974, Cranbury Development Corporation ("CDC") bought the site.  Munitions were found at the site in 2001, when munition components and environmental investigations began. The New Jersey Department of Environmental Protection ("NJDEP") has been providing oversight for the environmental investigations at the site since 2003.

In early 2005, CDC and Plaintiff entered into an Administrative Consent Order ("ACO") with the NJDEP regarding site cleanup. CDC sold the site to Cranbury Brick Yard, LLC ("Cranbury Brick") in 2005. In 2006, CDC, Cranbury Brick and Plaintiff entered into a settlement agreement, wherein, the sale of the site was finalized and Plaintiff agreed to pay CDC $800,000 and place $1.85 million in escrow for Cranbury Brick. The parties dispute the meaning of a phrase in the settlement agreement referring to Plaintiff's agreement that it would have no right to participate in the cleanup of the site because Plaintiff submits that this agreement does not encompass Excluded Environmental Liabilities, whereas Defendants argue that the agreement bars Plaintiff's involvement. In the settlement agreement, Cranbury Brick replaced CDC and Cranbury Brick obtained insurance policies which provide complete coverage after $4.35 million has been spent, but Plaintiff submits

that those policies are no longer in effect, and is unaware of any specifics regarding current insurance coverage.

The parties do not dispute that Cranbury Brick is presently overseeing the site cleanup, but Cranbury Brick's specific capacity is disputed. The parties also dispute when the cleanup will be completed. Defendants assert that the contemplated cleanup completion was in the spring of 2007, whereas Plaintiff argues that since the Cranbury Brick contractor was fired, there has not been constant work being done at the site to expedite the completion and the final completion date is unknown.

Defendants assert that Cranbury Brick and its contractor are financially capable of completing the cleanup, while Plaintiff asserts that the testimony relied on by Defendants in making this statement does not support Defendants' conclusion. The parties dispute Cranbury Brick's financial and scientific capabilities in conducting the cleanup under state law. Defendants argue that the NJDEP site manager testified that Cranbury Brick and its contractor are scientifically and financially capable of finishing the job. Plaintiff points out that the NJDEP site manager merely stated that he did not have any question about the scientific capability of Cranbury and that he testified that he had no knowledge of Cranbury Brick's financial ability.

The parties dispute the validity of a Cranbury Brick representative's statements regarding the necessity of Defendants' involvement in the cleanup of the site. Defendants assert that Cranbury Brick will perform the site cleanup, but Plaintiff argues that Cranbury Brick is merely in control of the cleanup process and argues that Cranbury Brick may not be able to complete the process, and, if this occurs, then Plaintiff, as a signatory to the ACO, will be held responsible. Plaintiff asserts that

the ACO expressly settles all or part of their liability under CERCLA to the State of New Jersey and that the ACO states that it is intended to resolve Plaintiff's liability to the State of New Jersey, while preserving the rights of Plaintiff to seek contribution for costs from parties not signatories to the ACO. Defendants dispute that this statement has any relevance.

The parties dispute whether Cranbury Brick has represented that it wants to conduct the cleanup and the decisions stemming therefrom without the involvement of unnecessary entities, which Defendants imply, means without their help.  On the other hand, Plaintiff argues that the opinion of the one person upon which Defendants rely does not confer that Defendants' assistance in the cleanup is not necessary.

Defendants assert that a representative of NJDEP, Greg Zaluskas, has stated that it is not necessary for Defendants to be involved in the state ordered cleanup. Plaintiff, however, rebuts Defendants' classification of Mr. Zalaskas and shows that his proper title is NJDEP Case Manager for the site, therefore, Plaintiff argues that the statement made by Mr. Zalaskus should not be taken as a representation of NJDEP.

The parties dispute the cost estimates for the preliminary clearance of munitions and explosives of concern and other plans which were developed and implemented to accomplish the tasks approved by the ACO. Plaintiff argues that some of the actions performed through January of 2006 had a cost of $1,149,071.00.  Defendants argue that the evidence relied upon by Plaintiff is hearsay and that the person giving these estimates later rescinded his comments.

The parties dispute whether or not NJDEP or Cranbury Brick has received any objections regarding Cranbury Brick's ability to conduct the state ordered cleanup from Plaintiff.  Defendants

argue that neither Cranbury Brick nor NJDEP are in receipt of any objections to the way in which the cleanup is being conducted, where Plaintiff argues that it is not satisfied with the cleanup progress and has expressed dissatisfaction with Cranbury Brick's delay and lack of cooperation to Cranbury Brick's attorneys several times. The parties do not dispute that no Notice of Deficiency has been issued to Defendants under the Amended ACO for the site.

As noted above, both parties submitted responses to each others' statements of undisputed material fact, and supplemental statements of undisputed material facts. The parties essentially dispute everything that the other submits as an undisputed material fact.

## II.     STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). However, "[i]n determining whether there are

any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000) aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

### III.   DISCUSSION

After carefully reviewing the record and papers submitted by both parties, this Court finds that there are significant issues of material fact which preclude summary judgment to either party. Plaintiff's motion for injunctive relief is also denied since there is no threat of irreparable harm under the circumstances of this case, when money damages are sought.

Plaintiff is seeking costs for contribution from Defendants under alleged CERCLA liability, as either a former owner of the site, or a person that arranged for disposal of hazardous substances at the site. See 42 U.S.C. 9601, §107(a)(2) and (3). Defendants contend that Plaintiff has not produced sufficient evidence to demonstrate that Defendants were owners or operators of the site, or that they arranged for disposal of hazardous substances at the site.

This court finds that there are many issues of material fact as enumerated in the background section above. Under these circumstances, summary judgment is not appropriate. The motions are **denied**.

### IV.   CONCLUSION

For the reasons stated, it is the finding of this Court that Defendants' motion for summary judgment is **denied**. Plaintiff's motion for summary judgment is **denied**. Plaintiff's motion fo

injunctive relief is **denied**.  An appropriate Order accompanies this Opinion.

                                                                    S/ Dennis M.Cavanaugh
                                                                  Dennis M. Cavanaugh, U.S.D.J.

Date:            January   28  , 2008
Orig.:           Clerk
cc:              Counsel of Record
                 The Honorable Mark Falk, U.S.M.J.
                 File